## MACHIN VS. THOMPSON.

The act of limitation of 19th December, 1846, (*Digest, page* 943,) makes no reservation in favor of non-residents or *femes covert*, and the courts can make none. (*Pryor & wife vs. Ryburn.*)

Where a slave is taken off and sold, without the knowledge or consent of the owner; and the vendee purchases in good faith, for a fair price, without any knowledge of the adverse claim of another, the fraud of his vendor does not attach to him and prevent the operation of the statute.

*Appeal from the Circuit Court of Arkansas County in Chancery.*

Hon. THEODORIC F. SORRELLS, Circuit Judge.

YELL and WILLIAMS & WILLIAMS, for the appellant.

CUMMINS, for appellee.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 21st of December, 1853, Leah Machin, by her husband John Machin, as her next friend, filed a bill on the chancery side of the Arkansas Circuit Court, against Henry J. Thompson, for the recovery of a negro woman named *Celia*, and her children, with hire, &c. The cause was heard upon bill, answer, replication and an agreed state of facts.

The facts agreed upon by the counsel of the parties are, that on the 4th of October, 1819, Nancy Renwick, a resident of South Carolina, and the mother of Mrs. Machin, by deed of that date, conveyed to the separate use, &c., of Mrs. Machin for her life, and then to her children, a negro woman named *Sarah*, and her children, *Spencer* and *Young*, with the future increase of the wo-

man. That at the time of the conveyance, Mrs. Machin was a married woman, and has since continued covert, the wife of John Machin. That afterwards Mrs. Machin and her husband removed to the State of Georgia, and from thence to Alabama, taking said slaves with them. That while they were in Georgia, about the year 1828 or 1829, the girl *Celia* was born of the woman Sarah. Complainant and her husband resided in Randolph county, Alabama, from the time they removed there until the filing of the bill. In the year 1843, one Isaac B. Payne got possession of the girl *Celia*, and without the consent or knowledge of Mrs. Machin, took her to Memphis, Tennessee, where he sold her openly, as stated below, Mrs. Machin knowing nothing of her being taken to Memphis, or where she was taken from thence. *Celia* was offered for sale by Payne, at Memphis, and was bought by the defendant and his partner, Shanks, in good faith, without notice of any adverse claim or title to the negro, at her reasonable cash value in the market; and they took from Payne a bill of sale with warranty of title. Shanks immediately sold his interest in the girl to Thompson and endorsed a release thereof, upon the bill of sale to him. She was delivered to him about the 1st of October, 1843, and in about three months thereafter he brought her to Arkansas, and held her in peaceable and uninterrupted possession from that time to the commencement of this suit, in Arkansas county, openly and adversely to all the world. Since defendant purchased her, she has had two children, *Elizabeth* and *Jim*. The value and hire of the mother and children, are also agreed upon. The defendant, in his answer, relied upon the limitation act of 19th December, 1846, as a bar to the relief sought by the bill.

The court dismissed the bill for want of equity, and the complainant appealed to this court.

More than five years had elapsed from the 19th December, 1846, the date of the limitation act relied on, (*Digest, page* 943) to the time when this suit was commenced, during all which period, the defendant held the peaceable adverse possession of the

slaves, under his purchase of the woman in the market; and the statute declares, that such possession shall vest in the possessor the right of property thereto, as against all persons, and may be relied on as a complete bar to any suit in law or equity.

During all this time, Mrs. Machin was a married woman, and a non-resident of the State, but we have held in *Pryor & wife vs. Ryburn*, at the present term, that inasmuch as the statute makes no reservation in favor of such persons, the courts can make none.

The counsel of complainant have referred to the case of *Michan & wife vs. Wyatt*, 21 *Alabama Rep.* 813, as an authority to show that a court of equity will exempt a *feme covert* from the operation of the statute. The real complainant in that case, though there called *Mrs. Michan*, is doubtless, from the facts of the case, the same woman who is complaining here, under the name of *Machin*. From the report of that case, it appears that some of the same family of negroes, the descendants of Sarah, were levied upon and sold for the debts ot the husband of the complainant. After the lapse of six years, she and her husband brought a bill against the purchaser, who relied upon the Alabama act of limitation as a bar; and the court held that the suit was not barred, expressly upon the ground that there was, upon the face of the act, a reservation in favor of married women.

It is moreover insisted by the counsel of the complainant, that the slave having been taken from her possession by Payne, and carried off, it was a fraud upon her rights, and that the statute would not run against her, until she ascertained where, and in whose hands the slave was.

How the slave got into the possession of Payne, does not appear, but it is agreed that she was taken off and sold, without the knowledge or consent of complainant. The bill alleges that she did not ascertain where the woman *Celia* was, until a short time before bringing this suit, and the agreement of facts is understood to admit this to be true. The answer denies that defendant had any knowledge of complainant, or her right to the slave, until

13c

about the time the bill was filed. The case, therefore, stands briefly, thus: Payne, in fraud of complainant's rights, took the negro to Memphis and sold her openly in the market; the defendant purchased her in good faith, for a fair price, without any knowledge of the adverse title of the complainant, and afterwards held her as his own property, under the title thus acquired, until after the period of limitation ran out. Under this state of facts, does the fraud of Payne attach to the defendant, and prevent the operation of the statute?

If this suit were between Mrs. Machin and Payne—if, after fraudulently running off the negro, he had retained her, and kept his locality concealed from Mrs. Machin, or sold her to another with a full knowledge of the fraud, there are not wanting authorities to sustain the position in reference to general acts of limitation, that Mrs. Machin would be allowed the full period of limitation, in a court of equity, to bring her suit after obtaining the information upon which to base it. See the remarks of Mr. ANGELL on this subject, in his work on *Limitation*, chap. 18, *page* 188, *et seq.*, and the cases collected and reviewed by him. But how far the courts should apply this doctrine to the statute under consideration, or whether at all, it being a statute of title, as well as of limitation, we are not called upon now to decide, because the suit in this case is not against the party committing the fraud, or privy to it, but against one purchasing in good faith, without notice, &c.

We find no authority to sustain the position, that the statute would not run in favor of defendant, because his vendor obtained the slave by fraud.

It may be a hard case for Mrs. Machin to lose the slave, but it would be equally a hardship, for the defendant to surrender her and her children, with an account of hire for more than ten years after purchasing the woman in the market at her full value, and in good faith. Upon whom the loss should fall in such cases, was a question of public policy, to be settled by the Legislature, and they have determined it, we think, by the form in which the

statute was passed. Scarcely any general law can be devised, by the imperfect wisdom of man, that will not operate hardly in some cases, however much it may tend to promote the public good.

The decree of the court below is affirmed.